SCHOTT, Judge.
These consolidated cases arose out of an accident between a motorcycle driven by plaintiff, Charles W. Gates, and an automobile driven by defendant, Doris C. Simpson. In one case, Mr. Gates brought suit for his own damages against Mrs. Simpson and her liability insurer, State Farm Mutual Automobile Insurance Company.
In the companion case, Mr. Gates brought suit in behalf of his minor daughter, Charlene Gates, against the same defendants. Charlene was a passenger on the motorcycle when the accident occurred. In the latter suit, defendants brought a third-party demand against Mr. Gates alternatively seeking a contribution from him as a joint tort feasor in the event that Mrs. Simpson was found to have been liable for Charlene’s injuries.
The trial judge held that the accident was caused by the joint negligence of Mrs. Simpson and Mr. Gates, and therefore awarded judgment to Charlene for her injuries in the amount of $20,000 and awarded judgment to Mrs. Simpson and her liability insurer on their third-party demand against Mr. Gates for one-half of the said amount or $10,000.
This appeal was taken by Mr. Gates individually and in his capactiy as administrator for Charlene from the judgment insofar as he was found to have been con-tributorily negligent and therefore liable for one-half of her injuries.
None of the parties has complained about the amount of the award made to Charlene. The only error assigned by appellant is the trial court’s finding that his contributory negligence was a proximate cause of the accident.
The parties are substantially in agreement as to the facts of the accident. It occurred on Hickory Street in Jefferson Parish, south of the Airline Highway, at a time when traffic was heavy and described as “bumper to bumper.” Hickory Street consists of two lanes running north and south, moving in opposite directions. Defendant and her husband operated a place of business on the east side of Hickory Street. Upon closing for the day Mr. Simpson exited from the parking lot in front of the business through a driveway on the north end of the lot so as to get through the northbound lane and then to take up a stopped position in the southbound lane, thereby blocking southbound traffic. In this way, Mrs. Simpson could leave the parking lot through another driveway on the south end of the property and have the benefit of Mr. Simpson’s interference as she entered the southbound lane after traversing the northbound lane.
When Mrs. Simpson left the parking lot, Mr. Floyd Babin, who had been proceeding north on Hickory Street, came to a stop, permitting her to proceed across the northbound lane, whereupon she moved slowly through the opening between Mr. Babin’s automobile and the traffic ahead, angling to the left so as to enter the southbound lane. Just as the right front portion of her automobile entered the southbound lane of Hickory Street it was struck by Gates’ northbound motorcycle.
Prior to the accident, Mr. Gates had been traveling north on Hickory Street some distance to the rear of Mr. Babin and the opening through which Mrs. Simpson made her way. He passed several automobiles which were moving slowly or stopped in the northbound lane running along the left side of those automobiles.
To some extent he used the southbound lane, which was clear, as a result of Mr. Simpson’s vehicle stopping traffic just beyond the point where the accident was to occur. The impact occurred in the southbound lane of traffic.
Appellant is relying on the case of Vastola v. Insurance Company of North *172 America, La.App., 204 So.2d 605, whose circumstances appellant argues are identical to the circumstances of the instant case. The Vastóla case involved an accident between a motorcycle and a pickup truck at the same general location as the accident in the instant case under practically identical traffic conditions. The respective positions of plaintiff and defendant in the Vastóla case are identical to those of Mr. Gates and Mrs. Simpson in the instant case. In Vastóla this Court found that the sole proximate cause of the accident was the negligence of the defendant pickup truck operator. In written reasons for judgment, the trial court made reference to Vastóla but distinguished its facts from those of the instant case. He held that the “major difference in the two cases is that in the Vastóla case the (southbound) traffic was stopped by virtue of the railroad crossing (located parallel to and south of the Airline Highway) and thus traffic was not to be expected in the southbound lane, and in this case traffic was stopped because of the red light at the intersection of Airline Highway, and traffic could be expected in the southbound lane, and, indeed, at the time there was traffic in that lane, which was being held up by Mr. Simpson’s vehicle.” He also held that since there was no large truck, as there was in Vastóla, which would have obscured Mr. Gates’ vision “he should have realized there was an opening between the Babin vehicle and the vehicles in front of it in the north (bound) lane, and with the stopping of Mr. Simpson in the south (bound) lane, that some vehicle may be expected to enter the highway at that point.” Finally, the trial judge alluded to the speed at which Mr. Gates was traveling as compared to the speed of the plaintiff in Vas-tóla and concluded that Mr. Gates’ speed was “a matter of conjecture.”
Appellant maintains that there is no valid distinction between the cases and therefore they cannot be harmonized. We agree with that contention. However, we believe that this Court erred in the Vastóla case as to the standard of care applicable to the motorcycle operator under those circumstances, and we therefore overrule that case.
In the Vastóla case the Court held:
“. . . because there were no intersecting streets between the railroad crossing and Sauve Road plaintiff’s son was not obligated to anticipate the entry of vehicles from an intersecting street into his pathway.”
In the Vastóla case, as in the present case, the motorcyclist chose to leave his position in a line of slow moving or stopped traffic and to move ahead of this traffic by driving in the left lane. In doing so he performed an extremely dangerous maneuver and should be held to the highest degree of care.
The degree of care imposed in the Vas-tóla case is similar to that applied to a motorist traveling on a favored street, who has no' duty to anticipate that another motorist will disregard a stop sign and move into his path. However, a motorist traveling in the left lane in the act of passing slow moving or stopped traffic must be held to a higher degree of care because of the dangerous maneuver he is performing.
In this case plaintiff failed to maintain a cautious lookout in regard to the vehicles he was passing or to other vehicles entering the roadway between these stopped vehicles from the commercial area and the parking lot on that side of the road. He created a dangerous situation by disregarding the dictates of common sense and courtesy. Not expecting plaintiff to be where he legally had no right to be, defendant concurrently caused the accident by entering that lane of traffic without first ascertaining that it was safe to do so. Neither exercised reasonable precautions under the unusual situation thus existing, and each *173 therefore negligently contributed to the accident.
Affirmed.
STOULIG, J., dissented with written reasons joined in by REGAN, J., and BAILES, J., pro tem.
BOUTALL, J., recused.